Good morning, Your Honors. My name is Nancy Miller, and I represent the plaintiffs in the de Osorio matter, the named plaintiffs in the Costello-Ong matter, and the class members. And before I go any farther, I would like to reserve three minutes for rebuttal. I'll try and help you, but keep an eye on the clock. Okay. I will. What we're actually here today to discuss is the universe of 203-H. And I prefer to refer to it as 203 as opposed to 8 U.S.C. 1153-A3, because that's a bit of a mouthful. In order to do that, I would like to discuss plain language, statutory construction, legislative intent, and then matter of way. Under Chevron Step 1, we look first to the plain language to see if we can determine what Congress intended and whether Congress spoke to the issue. The first place for us to look in the plain language is the title of Section 203-H-3, and it is Treatment of Certain Unmarried Sons and Daughters Seeking Status as Family-Sponsored, Employment-Based, and Diversity Immigrants. They make mention of all three categories in terms of determining which derivatives are affected. Then we look to the language of the statute itself, starting with the first section. And the first section gives us both, in general, an overview by telling us that it involves children of lawful permanent residents, and that's covered under A-2-A, and derivatives, which is AND-D in the second section, which refers to family-based, employment-based, diversity derivatives. Derivatives are, of course, children or accompanying family members. And in this instance, they are unmarried sons and daughters who are under the age of 21. Then the next part of Section 1 gives us the formula for determining when a child ages out, and that is, of course, the subtraction of the time that the petition was pending. You're talking about Subsection H now, correct? Yes, I am. Subsection H-1. And that subtracts the number of days that the petition is pending, and I think we all agree that pending means the date of file to the date that the petition is decided, not the application for a green card. As a practical matter, though, the real, the gist of the problem here is aging out of 21, right? I mean, the time it takes to actually process the application, at least as I read the record, is maybe a few weeks, but the real problem here is the years that go by while people wait. Sometimes it's a few weeks. Certainly many, many years ago it was a few weeks because... I just don't want to get, as I see it, that's not really, that's not the real part of the problem. Well, the heart of the problem is oversubscription, which is the years and decades that it takes. Let's drop down to H-3. Let's assume, just for purposes of argument, you make an argument in your briefs that the aliens petition referenced in H-3 refers to all of the petitions that are in H-2, that are described in H-2. Yes. Let's assume we agreed with that. What do we do, though, about the language in H-3 regarding automatically being converted? Now, that's where the government makes their key argument that where the petitioner was the aunt or whatever, there is no automatic conversion because the parent would have to then become an LPR and then would have to refile a petition, and so there's a gap. And so when you have a gap of that sort requiring a different petitioner, how can there be automatic conversion? That's, if I understand the government's argument, that's their key. Okay. First of all, I do agree that that's their argument and that that is a key, but I think we have to look at the situation. As in this instance, one instance I will agree with one thing that the government said, which is that the application and determination of whether or not someone is eligible for a green card, for immigrant visa granted to them, is made on the date that the admission that is determined on the day of admission to the U.S. or the date of adjudication of the application for adjustment. In other words, until the immigrant visa or the adjustment of status is made on a particular day, there's no determination of whether or not that derivative has aged out. They adjudicate the immigrant visa for the parent. The parent is then granted immigrant visa or lawful permanent resident status. They then look to the child to see whether or not the child is over 21, whether or not if the child is biologically over 21, the formula needs to be implemented, whether it needs to be applied, whether or not there are any other reasons why that child is no longer a child, such as married or anything like that. And then once they have determined at that time that the child is no longer a child under the age, under 21, under 203H1, then there's the determination that you apply H3, which makes them the child of a lawful permanent resident because that parent has been just granted lawful permanent resident status. There's no gap. So if I understand that, you're saying that even if the child is, the derivative child is 26 at the point when the parent finally gets their number comes up. I guess that's a bad way of saying it. Their number becomes current. I don't remember the exact jargon. And they're entitled to adjustment of status. The adjudication is made. They're given that. They become an LPR. So the child's now 26, but there was no official determination that they had aged out. That's correct, Your Honor. But even then, doesn't the parent then have to submit? It's still not automatic because the parent would have to submit a separate petition, an I-130 petition for the child, correct? Or is it automatic? It doesn't have to be. I think if we look at 203H, the first part, which talks about if the age of the alien is determined under paragraph 1 to be 21 years, that defines who's affected by 203H. The second part that talks about the petition will be automatically converted to the appropriate category with the old priority date, and I'm paraphrasing. Please. Okay. That tells us what Congress wanted and expected to happen, but how that comes about, whether or not it requires a new petition, whether or not the old petition is given full force and effect to those aged-out children, is something. How can that be if the original petition is from the aunt? So that doesn't comply with the regulations. As a practical matter, how can it automatically convert if the parent decides not to petition, to submit a petition? The parent has the parent certainly has the prerogative to not go forward with their children, but I take it you mean that they should decide not to file a petition but do want to bring their children here. That, I believe, is a question of implementation, and Congress may well have left the procedure of implementation to the discretion of the agency as long as they include every word and all of the meaning of 203H3. They could have said we will automatically convert the original petition to an F2B. We will require that you file a new petition. They had the option to do any of those things. They had the option to make a regulation. They didn't do any of that. They simply ignored Section 1. But what do we do with the problem where in H3 there is no appropriate category to which the applicant can automatically convert to the grandson, for example? Your Honor, with all due respect, I don't think that that is the case. If the automatic conversion takes place on the date that it is determined that the child is no longer eligible for derivative status under 203H1, they are immediately the child, adult son and daughter, of the now granted, now green card granted prior principal beneficiary, now petitioner. So you're saying that the fact that there is a new application filed by a different petitioner should be overlooked by the agency and instead we should just look back to the original petition that was filed and treat it as if it's a legal nullity that a second petition has been filed? I'm saying that the filing of a second petition is not essential. So it's a legal nullity. It has no effect if it's not essential. That's your position. It has to be. Otherwise it has to mean something. Other than procedurally to allow the government to work on something, yes, it could be considered a nullity. Okay. Yes. All right. The problem, of course, is that we have the cases that say, no, you have to look at the second, the identity of the second petitioner and then make a determination as to whether there is an appropriate category to which the beneficiary can convert in light of that second petition. And therein lies the problem, does it not? I assume that we're talking both about Wang and Lee at the moment. Yes. I think that the reason that both Wang and Lee are fatally flawed is that neither one gives credence or gives any attention to the first section of 203-H3. What they did was ignore the instructions of what to do, which is set forth specifically in 203-H3, first part, that the age of the alien is determined under paragraph if it is determined that they are over 21 for the purposes of A2A and D, then the alien's petition. And that tells them what to do once they've made that determination. And again, I come back to that Congress said if they are aged out under formula of the first paragraph, then we want to have them converted automatically to the appropriate category. How that is designated can be left up to the discretion of the agency, whether they want to consider that they were previously a derivative of F4 and are now in their own in F4, whether they are now F2B. However it is that the agency wants to declare that, whether the agency says they need a new petition, whether it says they don't, that's micromanaging. And they don't want to micromanage. What they want is to have the designation automatically converted to the appropriate category for those people in the first section where it is clear who they mean. Okay. I understand your argument. I'm not sure I necessarily agree with it, but I understand. The problem is that the first half of H3 and the second half of H3 don't exactly mesh. And there's nothing in the second half of H3 that suggests that Congress was directing the agency to create a whole new apparatus of categories beyond what they already had. So there's going to be the situation, which the government points out, where the person, the child, the derivative child, is over 21, and the child's parent doesn't, is not an LPR at that point, let alone having submitted a petition. Now, I know your argument is, well, they could wait and not make that determination until the point when the parent becomes an LPR. And although I can see that the statute is susceptible to your reading, it doesn't compel that reading. And so we have to defer to the agency's reading of the statute. Well, first of all, it's not that the agency can wait to make the determination of age out. The agency must wait because the eligibility for an immigrant visa is not made until the date of adjudication of the immigrant visa application or the adjustment of status application. So that is, point of fact, not discretionary, but it is not made until that date. So at the time that the parent is approved for an immigrant visa is exactly the time when the determination is made of whether the derivative has aged out. And I also, with all due respect, don't believe that we go straight from whether or not there is a question, potentially, in the language we are to whether or not the agency's implementation is rational or reasonable. We then go to congressional intent. And congressional intent is clear that, starting with Senator Feinstein's statements, that this was designed to aid not only derivatives who aged out on the basis of backlogs, procedural backlogs, but also for those who aged out for under or over subscription. If you take the government's position and you look at what Wang created, it ignores congressional intent completely. In fact, it defeats it. Alito, doesn't your argument ignore H1A, which seems to be counter to the position that you're taking as to when the determination is made? Because this says that we don't look at the age until the visa actually becomes available. No, I don't think it does, Your Honor. I don't think it counters my argument. Maybe not. Because A is the formula. And I grant you that that is the — that they look at the date that the petition from the family member was filed and the date that the petition was approved, and they subtract the time that it was pending in between there. That is what the formula is that's applied. When that's applied — Is that what that means? Yeah. I read it to mean the age on the date on which the visa number becomes available. Right? That's when the State Department current date is extended to such a point that the beneficiary who is waiting for the visa can file for it. The date on which the immigrant visa number becomes available is the date that you look at the biological age of the child. Right. From then, from that age, you subtract the time that the petition was signed. But I thought I — maybe I misunderstood your argument. I thought I heard you say that we look at the age on the date that the sponsor adjusts. Well, we look at the biological age under Section A in terms of determining how to implement the formula. Let me ask my question a little different way. Aren't we talking about two different dates? One is the date on which the petitioner becomes a lawful permanent resident, and then the other date is the date on which the visa becomes available for the beneficiary. Yes. Okay. But that's not inconsistent. All right. Okay. All right. You wanted to save some time, and I think we've all — Yeah. All right. Let's hear from the others. Thank you. Good morning, Your Honors. My name is Gisela Westwater, and I'm here on behalf of the United States, the defendant's appellees in this matter. The government believes that the defendant's — or that the plaintiff appellant's position must fail for two reasons. First, just based on the F3, F4 petitions, there is no appropriate category to which the F3, F4 petitions can convert. Well, the opposing counsel says, look, at the time when the parent, who's the immediate beneficiary, adjusts, that's when the government looks at whether the children are accompanying and following whatever the terminology is, and can, at that point, convert the prior petition to the appropriate category, either by giving them a new category or using the parent's presumed petition. Why doesn't that work? There's two reasons. The first is that no matter when CIS does the determination, the invalidity or the gap occurs in the past. And so that would mean, let's say that we even have the same two petitioners. There are many cases where you have an LPR who files for his adult daughter. She gets married. There is no category for a married adult daughter of an LPR. She no longer has a petition that's valid for her. Let's say USCIS doesn't find out, because there's millions of petitions out there. They're not aware of every single change in life that happens. This daughter now divorces, and she tries to file an application on that date. Yes, USCIS is determining her eligibility, but they will look and determine, I'm sorry, even though today you appear to be eligible, you actually fell out and you had a gap, and that petition is no longer valid as to you, and your father will need to file a new petition, and you'll get a new priority date. So even though it's on that day that the determination is made, it's sort of retroactive. If you look at the other automatic conversion provisions, they're happening on the day that the changing or disqualifying event takes place, whether or not USCIS knows about it. So that would be the first reason. The second reason is because it has to be the same petitioner. There's nothing in here. On the day that the parent becomes an LPR, yes, that adult child is eligible for F2B classification, but not based on the F3, F4 petition. Well, there's nothing in the statute that says it has to be the same petition that I saw. Now, I know you make an argument based on past practices, but is there anything statutory that requires it to be the same petition? Well, Your Honor, the government would say perhaps at best that it is an ambiguous provision in here. However, in past practice, appropriate category and the transfer of priority dates has been under such a scheme, and the Congress would be aware of this. In fact, in the CSPA itself, Congress has very explicitly set out some age, where it has frozen ages for the children of United States citizens. It has frozen ages for asylees and refugees for their derivative children. So it has shown that Congress knew how to explicitly provide for those recognized family members to immigrate together. And in other provisions where they have meant for the petitioner and the subsequent petitioner to not be the same, Congress has been explicit. Those are different categories, such as in the Western Hemispheric Savings Clause, which was referred to by the opposing parties. Also, employment categories. Those are explicitly provided for, and otherwise, in the family categories, it has traditionally been only from the same petitioner. I know that the opposing parties make a big deal out of self-petitions, but that is really a category sui generis. So when you're looking at spouses, widowers of U.S. citizens, those petitions are treated as though it is the same petitioner, the deceased U.S. citizen or the deceased LPR. The same thing under the Patriot Act, under the Homeland Act, where we look at individuals who are going to immigrate, but for the death of a loved one through a terrorist act. Even in those cases, Congress has been clear as to how those conversions are to take place via the various relationships between people. And absent that, we argue at the least there is ambiguity and that the agency's interpretation as to what could be meant in this category should be given deference. Your Honor, the second category, the second reason why plaintiff's appellant's position would fail is because the F-2B petitions are not even entitled to consideration under this provision H-3 of the CSPA. And that would be because under H-3, those are only considered for petitions filed to classify an alien under F-2A or D. So a derivative. These F-2B petitions that are filed now by the plaintiffs once they become LPRs are not filed to classify an alien under F-2A or under D. They are filed to classify the alien specifically under F-2B, which would not qualify for consideration. And absent any language directing the court to make a different determination, we again say that would be at the least ambiguous so that the court should defer to the BIA's interpretation in a matter of long. I would also like to address the arguments that plaintiffs have made regarding congressional intent. It is interesting that the Senator Feinstein quote came out most recently. However, that quote was a year before the CSPA was adopted. It was from the Senate version. And the government would admit the language in the Senate version was originally much more generous than the language that was found in the House version of the same bill. The House version of the same CSPA bill only applied to children of United States citizens. At this time, as you'll see through the different portions of congressional history, at this time USCIS had a huge backlog in adjustment of status applications. There's even some reference to the fact that the CSPA would help those who had waited for years for a number to come current for them and simply aged out because the USCIS were sitting or taking a long time on these applications. And one, I think, member of the House even noted, however, this would even help those who were waiting for Department of State to process their applications, which was much faster normally. And so by the time we get to the end of the CSPA, when it's first being adopted by Congress, the House recognizes that the bill has undergone compromise language, that they have accepted some of the broader paragraphs or policies of the Senate provision, but not all. And in fact, on July 22nd, the House representative, Sensenbrenner, noted that the Senate bill, which they are incorporating parts of, addresses three other situations where alien children lose immigrant benefits by aging out as a result of INS processing delays. So what is the best, in your view, what is the best representation of what Congress intended for the final bill? Your Honor? Other than the language of the statute. We would believe a matter of wrong, which is the interpretation by the agency that is charged with interpreting the statute.  that specifically talks close to the promulgation or the passage of this act speaks to H3. The language that Senator Feinstein had put forward, yes, it might have been more beneficial. It was specifically not included, which one could interpret as rejected by the House and the Senate in their compromise legislation. And so to look to any of that language to determine the interpretation of a later provision would be inappropriate. We believe for that reason the most appropriate place for this court to look would be to the agency, which is considered to have the best understanding of how these terms are historically used, of what would be consistent with where Congress would have been going. And under Chevron, as well as Brand X, the court is reminded of the importance of the Bureau, of the Board's role in interpreting immigration provisions. To go further, the United States would point this court to a few of the provisions that were discussed in our brief. First, the automatic conversion provisions. We would note that the important language under those provisions is currently valid. It allows conversion of a currently valid petition from one currently valid category to another. And this again shows that once there has been a break in status, there has been a break in the classification, such as through death, through marriage, through aging out, then that occurrence or that automatic conversion movement between categories would either happen or fail. And so we believe there is a gap of time. Whether or not USCIS makes its final determination does not change the fact that that is a fact in time that takes place, such as the death of a spouse. Whether or not USCIS is aware of it, it occurs on the day in which it occurs, and the alien would either be eligible for a transfer to a different position, a movement, or not, regardless of when that's made. So are you saying that the derivative child is named in the ANTS petition? And are you saying at the point when the child becomes 21, he's automatically dropped from the petition, and is there a regulation or something that documents that? Well, it is that a derivative must be a child under the age of 21. And so when the time at most, if the determination were to be made under the Child Status Protection Act, when the time period, say it had pended 30 days or 2 years, when the child has reached then the 21 and 30 days or 21 plus 2 years provision, that is when it would take place. We have to remember that derivative status was passed for a very special reason. You know, Congress has the responsibility for setting lines. These people can come as family members. Your cousin can't. Your second uncle is not qualified. Congress made those hard decisions. Congress did not provide for grandchildren. Congress did not provide for nieces and nephews. And the reason that these nieces and nephews and grandchildren are coming is because Congress also decided we will not separate small children from their parents. These are not small children we're talking about, Your Honor. We're talking about 25-year-olds, 30-year-olds, 40-year-olds, who are not children when the number becomes current. And so the question is, should these adult sons and daughters of current LPRs be given some sort of preferential treatment because their parents were on a petition when they were children? And the BIA, through its interpretation, has determined no, that's not what Congress intended. Because as the government has pointed out in our brief, there are lots of people waiting for their sons and daughters to come. Some of these adults, some of the parents, came on an IR petition or maybe came under one of the amnesty provisions that did not allow children to adjust with you. They're all waiting for their sons and daughters. And which are more entitled or less entitled? Does having your parent wait for 10 years for a petition that you are not independently qualified on make a difference to Congress? Is that a different category? The government's position is that the Board of Immigration, BIA, sorry. Appeals. Appeals. Thank you, Your Honor. Is the best place to make those hard decisions, looking at how Congress has previously acted in the past as far as the different relationships. The government believes, consistent with the BIA's position, that these other LPRs, these other lawful permanent residents who have been here five, six years before these new plaintiffs' appellants come, their children are not less important simply because their parents came here and weren't able to bring their derivatives with them at that time. And so the reason behind the derivative classification is to keep children, small children, with their parents and not separate them. And to keep spouses together. But if there's a divorce, the ex-spouse no longer has a right to come as a derivative. You can't say, well, I waited 10 years, it's not my fault you got divorced. Because why? Because the purpose of the derivative is to keep a certain category of people from being separated. I know that plaintiff appellants talk a lot about family unity. Everybody agrees Congress looks to family unity, but it sets out the status. And the question is not, does Congress want the unity of families, it's which families. Under D, the derivative provision, it is to keep parents together with their small children. But once these children have aged out and are no longer coming with their parents as derivatives, then the F2B status classifies with them. And that has a date and a timeline that they must wait based upon the day that the parent files the petition. And the Board of Immigration Appeals has found that based upon the legislation, based upon the language, based upon past practice, there is no reason to disturb the recognition of when a priority date is assigned. There is a specific regulation in place that states how priority dates are assigned, and the BIA found nothing compelling to change the requirement of the same petitioner in order to retain a priority date, the same relationship in order to retain a priority date, the requirement for a conversion that there be a currently valid petition for a person to convert based on the same relationship. Now, one argument they make is that the opposing counsel makes is that the AND is virtually read out of H3. And I think you rely on the regulation and, like, one small category where there's the father, the mother, and the child, that there's an automatic conversion. And that's the only place it applies. Is that unduly narrow, I think, is the opposing counsel's argument, an unduly narrow reading of that basically reads it out of the statute? Well, no, Your Honor. I think it should be recognized that when Congress says F2A, because of the wording within that section, within that subsection, you'll see that AND D refers to derivatives. So a derivative of an F2A petition would be referred to as AND D in this part of the CSPA. Therefore, although it may be reading it very limited, that does not invalidate somehow that Congress could have here meant to simply change a very small area of the law. As the government briefed, prior to this time, every other currently valid category, so every other category where an alien was able to move from this status to this status upon the happening of event, was provided for as a conversion. So all of the other times when you move between categories based on marriage or aging out or divorce, all of those were allowed to happen, and naturalization, were allowed to happen automatically without the need for a new petition. The only one where it's not provided for in regulation was the categories, the F2A and the F2AD, the derivative of F2A. Those had to file new petitions. So there is nothing inherently wrong with thinking Congress would want to bring this classification into line with how all the other family classifications were allowed to automatically convert. And one of the reasons why Congress might have needed to do this is because of the idea for the derivative of an F2A to convert into an F2B. One petition has to kind of split into two, and that's not necessarily an easy thing to have done before. So previously, regulation required that the F2A petition for the mother, we'll say it's a husband applying for the wife and the child, their child. He applied for the mother with the child as a derivative. The child turns 21. Well, the mother is still waiting. But if we automatically converted, it wasn't necessarily very clear what happened to that petition. Is that one petition now considered two petitions, an F2A petition, F2B? So what we have is Congress passing a statute to say, yes, this now notionally splits into two petitions. One is still valid for the mother, the F2A, and you don't need to file a new one for that son. He's going to convert from an F2A derivative now into his own F2B. While perhaps plaintiff's appellants claim that this is a very small thing for Congress to have done, I don't know that at the same time one can say that's too minuscule of a thing for Congress to have been considered with. Congress has passed many other statutes with similarly small, finite audiences in mind. Are there any further questions? In that case, Your Honor, the government submits that because there is no appropriate category for the original F3 or F4 petition to convert to, and because the F2B petition is not available for consideration for H3, that the court should uphold the decisions below and defer to the Board of Immigration Appeals termination. Thank you. Thank you, Counsel. Ms. Miller, I'll give you a minute to rebuttal. Thank you. Your Honor, the problem with Wang and the government's position is that it does, in fact, ignore and D. Under Wang, and D has no meaning at all because the F2A petitions are covered under the first section. There would be no need for the section dealing with derivatives with and D. The government gave an example of the married daughter of a permanent resident and how that daughter could not subsequently divorce and then use the old petition. That's very true because there is a specific statute that says that upon marriage, as a matter of law, the petition filed for the unmarried son and daughter under F2B is either denied or revoked. It speaks directly to that situation. Our brief talks about — all of the briefs talk about the fact that there are various situations within the Immigration Act where you can have a different petitioner and retain the same priority date, where you can have an old petition and a new petition and retain the old date. Specifically, looking at Western Hemisphere, which allowed for the beneficiaries to get their — with petitions that had never been filed, that weren't even available at the time that they were given this grandfathered status, this right to keep their old petitions, their old priority dates, with what would have to be a new petition. Counsel, you're about a minute and a half over your minute, so I think we'll wrap it up. Okay. Judge Reimer, any further questions? No, thanks. All right, the case just argued is submitted. We'll get you an answer as soon as we can. We'll take a 10-minute recess.
judges: Rymer, Tallman, Ikuta, Cjj